UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STANLEY T. RICHARDSON,

        Plaintiff,

                                Case No. 2:12-cv-793
      v.                          JUDGE GREGORY L. FROST
                                Magistrate Judge Terence P. Kemp

OP & CMIA, et al.,

        Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of the motions to dismiss by the following Defendants: Joe Chaicci and Operative Plasterers' & Cement Masons' International Association Local #132 ("Local 132"), Operative Plasterers' & Cement Masons' International Association ("OP & CMIA"), Mark McCleskey, and Richard Bailey[1] and John Higgins. (ECF Nos. 25, 26, 28, and 30.) Also before the Court is the consolidated memorandum in opposition to the motions filed by Plaintiff Stanley T. Richardson. (ECF No. 37.) The motions of all Defendants rely, for the most part, on the same arguments so this Court will treat them collectively unless otherwise indicated. For the following reasons this Court **GRANTS IN PART AND DENIES IN PART** the motion to dismiss of Joe Chaicci and Local 132 (ECF No. 26), **GRANTS IN PART AND DENIES IN PART** OP & CMIA's motion to dismiss (ECF No. 25), **GRANTS** Mark McCleskey's motion to dismiss (ECF No. 28), and **GRANTS** the motion to

---

[1] It is unclear why Mr. Bailey is listed as Defendant James Bailey but referred to as Richard Bailey by both Richardson and Mr. Bailey's counsel. On the assumption that these individuals know best, this Court will refer to Defendant James Bailey as Richard Bailey.

dismiss as to Richard Bailey and John Higgins (ECF No. 30).

## I.

Plaintiff Stanley T. Richardson alleges that starting in 2006 the defendants engaged in discrimination and retaliation against him because of comments Richardson made concerning the policies of the OP & CMIA with regard to African-American members.  Richardson filed this case *pro se* in August 2012 after the Equal Employment Opportunity Commission ("EEOC") dismissed Richardson's charges of discrimination and issued its notice of right to sue.  An amended complaint was filed in April 2013.  The following facts are based on the allegations contained in Richardson's amended complaint.

During the week of April 3, 2006, Richardson attended an international union meeting.  At the meeting Richardson complained that OP & CMIA did not have stewards available to file grievances and protect African-American union members against unfair labor practices by employers.  Richardson made additional statements concerning the work load, layoffs, and the replacement of African-American workers with Caucasian workers by employers that employed union members.  Richardson expressed the desire to bring in more skilled young African-American workers from the apprenticeship program to gain trade experience.  After Richardson made these comments, Defendant Bailey (an OP & CMIA field representative) and two of Bailey's associates escorted Richardson out of the meeting.

In 2006, Richardson lived and worked in Indiana and belonged to OP & CMIA Local 692 ("Local 692") under the direction of Mark McCleskey.  After the aforementioned international

union meeting, Richardson was able to work for one week and then was no longer called for job assignments in Indiana despite his efforts to gain employment through Local 692.

Richardson relocated to Ohio in 2007 and met with Defendant Chaicci at the Local 132 in order to find employment.  Richardson and Chaicci discussed Richardson's issues in Indiana and complaints made at the international union meeting.  Chaicci told Richardson that Chaicci "doesn't want a trouble maker on his team."  (ECF No. 22, at Page ID # 141.)

While affiliated with Local 132, Richardson was first employed by Gattis Construction pouring concrete in a strip mall plaza.  Chaicci was present at the job site when Richardson arrived and Richardson was laid off on the same day he started.

Richardson was next employed by Oglesby Construction in May 2007 to work a job at Canal Winchester (Ohio) High School.  The foreman on the job liked Richardson's work and said he would use Richardson for the rest of the summer.  After receiving a phone call from Chaicci, the foreman asked Richardson to "cut control joints in concrete that was already set." (*Id.* at Page ID # 142.)  Richardson told the foreman that it would be impossible to do and the foreman fired Richardson because he could not fulfill the job requirements.

The third job to which Richardson was assigned was with Mansfield Flooring.  The foreman was pleased with Richardson's work and told Richardson that he would call Chaicci to request Richardson in the future.  The complaint does not state whether Richardson returned to Mansfield Flooring or if the foreman requested Richardson for future work.

After the Mansfield Flooring job, Richardson was continuously told that there were no jobs available in the inner city area of Columbus (Ohio) that he was qualified to perform, despite

his knowledge of several projects in the area.  Richardson was able to get work on one-day jobs at "very far" locations.  (*Id.*)

At some point, although it is unclear when, Richardson received another job with a union contractor.  While at that job, Richardson saw Chaicci standing in a wooded area.  Chaicci approached Richardson and told him that he was not doing the job correctly, despite the job superintendent's opinion that Richardson was performing the job properly.  Chaicci also told Richardson to help other workers after Richardson was given permission to take lunch. Richardson never heard from the employer after that day.

In May 2008, Richardson had a conversation with James Crockett, another member of Local 132.  Richardson alleges that, according to Crockett, Defendant Chaicci "told [Crockett] not to hire [Richardson], and to stay away from [Richardson]."  (Am. Compl. at 2, ECF No. 22 at PageID# 142.)  Throughout 2009 and 2010 Richardson continued to make daily efforts to seek employment through Chaicci and was told that no work was available despite Richardson's knowledge that there were active job sites in the area.  Richardson alleges that he was unable to get work and the union "eventually droped [sic] my books, which is my trade for livelihood." (*Id.* at 3, PageID# 143.)

In 2009 and 2010 Richardson also spoke with OP & CMIA field representative John Higgins.  Higgins told Richardson that if Richardson could find employment then he would be able to rejoin the union.  Richardson was hired by Richard Thompson from Verkler Construction in 2010.  At some point during Richardson's employment, Higgins came to Verkler Construction

and instructed Richardson to leave the jobsite.  Thompson subsequently told Richardson that Higgins had "instructed [Thompson] not to hire [Richardson]."  (*Id.* at Page ID # 143.)

Richardson spoke with Chaicci of Local 132 again in the fall of 2011 at a contractors' convention.  Chaicci told Richardson that he "made trouble" and that Chaicci would "talk to [OP & CMIA]."  (*Id.*)  Richardson stated that he would "go to Smoot Construction" and Chaicci told Richardson "not to go over there stepping on anyone[']s toes."  (*Id.*)

Richardson contacted Chaicci after this conversation and was again informed that no work was available.  Richardson attempted several more calls in an effort to get into the union and obtain work.  After one of these calls, Richardson alleges: "I was told I have charges against the union, and the union business agent hung up on me."  (*Id.*)  Richardson continued to try to make contact with the union throughout 2011 and 2012.  He was informed that he "wouldn[']t be able to get [his] pension money, or get back in to the union, after [the union] told the EEOC that [Richardson] would be able too."  (*Id.*)

Although it is unclear when, Richardson filed charges of discrimination with the EEOC.  The EEOC mailed out Dismissal and Notice of Rights letters on May 31, 2012 dismissing Richardson's claims and granting him the right to bring the instant case.  (ECF No. 1, at Page ID # 48-51.)  The EEOC stated in these letters that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes."  (*Id.*)  Richardson subsequently filed this action against OP & CMIA and Local 132.  (ECF No. 1.)  The original complaint cites to Section 219.8 of the Nassau County (N.Y.) Unlawful Discriminatory Practices Law ("Nassau County UDPL"), Sections 157 and 158 of the National Labor Relations

5

Act ("NLRA"), and Title VII of the Civil Rights Act of 1964 ("Title VII").  (ECF No. 3, at Page ID # 60-63.)

With leave of Court, Richardson filed an amended complaint on April 18, 2013.  The amended complaint does not cite the above mentioned legal sources, but the motion to amend states that the "subject matter in this complaint modification will remain identical to the original."  (ECF No. 17, at Page ID # 129.)  This Court therefore assumes that Richardson continues to rely on the Nassau County UDPL, the NLRA, and Title VII as the legal bases for his substantive claims.  The amended complaint adds parties Chaicci, McCleskey, Higgins, and Bailey to this action and makes claims for discrimination, retaliation, and intentional tort.  (ECF No. 22.)

## II.

Defendants' motions move to dismiss Richardson's amended complaint based upon a lack of subject matter jurisdiction and a failure to state a claim upon which relief can be granted.

Federal Rule of Civil Procedure 12(b)(1) provides that an action may be dismissed for lack of subject matter jurisdiction. Under the Federal Rules of Civil Procedure, "[p]laintiffs have the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion...." *Weaver v. Univ. of Cincinnati,* 758 F. Supp. 446, 448 (S.D. Ohio 1991) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)). *See also Rapier v. Union City Non–Ferrous, Inc.,* 197 F. Supp. 2d 1008, 1012 (S.D. Ohio 2002) (citing *McNutt v. Gen. Motors Acceptance Corp. of Indiana, Inc.,* 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)); *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir. 1986) ("The plaintiff bears the burden of

6

establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction.").

Motions under Rule 12(b)(1) generally come in two varieties, either facial or factual attacks on the complaint. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). A facial attack on the subject matter jurisdiction alleged by a complaint merely questions the sufficiency of the pleading. *Id.* In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, a similar safeguard as that employed under Rule 12(b)(6) motions to dismiss. *Id.* The motions at issue present only facial attacks on subject matter jurisdiction.

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) requires the Court to construe Richardson's pleading in his favor, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present any plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Consequently, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

To be considered plausible, a claim must be more than merely conceivable. *Twombly*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). This means that "[a] claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The factual allegations of a pleading "must be enough to raise a right of relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

The pleadings of a *pro se* litigant are held to a less stringent standard than those prepared by an attorney and should be liberally construed in determining if they state a claim with facial plausibility. *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004).  This liberal standard, however, is not without limits. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  "The . . . courts should not have to guess at the nature of the claim asserted." *Id. See also Clark v. Johnston*, 413 F. App'x 804, 817 (6th Cir. 2011).

### III.

#### A.  *Claims Under the Nassau County (N.Y.) Unlawful Discriminatory Practices Law*

The original complaint filed in this case cites a provision of a Nassau County (N.Y.) local law against discrimination.  (ECF No. 3, at Page ID # 61-62.)  Specifically, Richardson appears to cite the Nassau County UDPL, Title C-2 § 219.8 (1970), as a substantive basis for his claims against Defendants.[2]

Neither the complaint nor amended complaint provides any reason why the local laws of Nassau County should apply in this case.  (ECF Nos. 3 and 22.)  The face of the Complaint and Amended Complaint show that the events alleged by Richardson occurred in either Ohio or Indiana.  Richardson does not allege any event that took place in the state of New York, let alone

---

[2] *Available at* http://www.nassaucountyny.gov/website/GenericServices/docs/ Unlawful_Discriminatory_Practices_Law.pdf

in Nassau County, as forming the basis of his claim.  Nor does Richardson allege that any of the Defendants are subject to the laws of Nassau County.   Further, Richardson's memorandum in opposition to the motions to dismiss does not speak to the claim based on the Nassau County UDPL, leaving the Court in the dark about why Richardson has tried to invoke it as a basis for this lawsuit.

Each of the Defendants' various motions to dismiss urges dismissal of Richardson's claim under the Nassau County UDPL for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  The Court agrees that subject-matter jurisdiction is lacking.  Even if Richardson had pleaded some connection to Nassau County, N.Y., that would trigger that county's laws to apply, the Nassau County UDPL does not authorize a private right of action.  At least one New York court has recognized that the Nassau County UDPL empowers only the Nassau County Attorney is authorized to bring an action under the law's provisions.  *See Sgroia v. North Shore-Long Island Health Sys.*, No. 601140/08, 2010 N.Y. Misc. LEXIS 5351, at *10 (N.Y. Sup. Ct. Nov. 3, 2010).  Therefore, to the extent that Richardson attempts to bring any claim under the Nassau County UDPL, the Court **DISMISSES** it for lack of subject matter jurisdiction.

**B.**      ***Claims Under Sections 157 and 158 of the National Labor Relations Act***

Sections 157 and 158 of the NLRA are also cited in Richardson's original complaint. (ECF No. 3, at Page ID # 62.)  The Supreme Court has stated that federal courts do not have original jurisdiction over claims arising under Sections 157 or 158.  "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board."  *San Diego Bldg. Trades Council,*

*Millman's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959); *see also Lewis v. Whirlpool Corp.*, 630 F.3d 484, 487 (6th Cir. 2011).

The National Labor Relations Board, therefore, has exclusive jurisdiction over the claims asserted in Richardson's amended complaint.  To the extent that any claim is raised under 29 U.S.C. §§ 157 and 158, it is **DISMISSED** for lack of subject matter jurisdiction.

**C.**      ***Title VII Claims Against Individual Defendants***

Richardson brings claims under Title VII against the individually named defendants McCleskey, Chaicci, Higgins, and Bailey for allegedly discriminatory and retaliatory conduct.  It is settled precedent, however, that Title VII does not provide personal liability for an individual who is not an employer or labor organization within the meaning of Title VII.  *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404-05 (6th Cir. 1997) ("We now hold that an individual employee/supervisor, who does not otherwise qualify as an "employer," may not be held personally liable under Title VII."); *Creusere v. Southwest Ohio Reg'l Council of Carpenters*, No. C-1-01-0021, 2002 U.S. Dist. LEXIS 5217, at *12-16 (S.D. Ohio Mar. 28, 2002) (applying *Wathen* rationale to hold that individual union officials are not subject to Title VII liability); *see also Burrell v. Henderson*, 483 F. Supp. 2d 595, 600 (S.D. Ohio 2007) (citing *Creusere* with approval in context of age discrimination claim).

None of the individual defendants in this case qualifies as an "employer" or "labor organization."  *See* 42 U.S.C. §§ 2000e(b) and (d).  The Court accordingly **DISMISSES** all Title VII claims against individual Defendants McCleskey, Chaicci, Higgins, and Bailey.

D.      *Title VII Claims Against Union Defendants*

1.      **Statute of Limitations**

Defendants contend that Richardson's Title VII claims are time-barred based on his failure to file a timely charge of discrimination with the EEOC.  Filing a timely charge with the EEOC is a prerequisite to filing a lawsuit under Title VII.  In the briefing on the various motions to dismiss, Defendants say that Richardson filed charges of discrimination with the EEOC no earlier than November 14, 2011.  Thus, to the extent that Richardson is basing his Title VII claim on actions occurring before January 18, 2011 (*i.e.*, 300 days before he filed his EEOC charges), Defendants argue that his claims are time barred.  *See* 42 U.S.C. § 2000e-5(e)(1) (specifying that charge must be filed within 180 days of the alleged unlawful practice or within 300 days in a "deferral state" having its own anti-discrimination alws); *Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001) (noting that Ohio is a deferral state to which the 300-day limitations period applies).

A motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally not the proper vehicle for dismissing a claim based upon the affirmative defense of the statute of limitations.  But when the allegations in the complaint affirmatively show that the claim is time-barred, dismissing the claim under Rule 12(b)(6) is appropriate. *Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).  In this case, the Court cannot say that the allegations in Richardson's amended complaint affirmatively show that his Title VII claim is time barred.  There is nothing in the pleadings to indicate when Richardson filed his charges with the EEOC.  Though the Court recognizes the real possibility that Richardson may have a statute

11

of limitations problem, that is not an issue that the Court can resolve against him at this stage.

### 2.     Discrimination

A claim of discrimination under Title VII requires that the labor organization's actions be based on the individual's race.  Richardson failed to allege that the actions of either OP & CMIA or Local 132 were motivated by racial animus, and therefore he has failed to plead facts sufficient to state a claim for discrimination.

Title VII applies to labor organizations.  42 U.S.C. § 2000e-2(c).  Title VII makes it an unlawful employment practice for labor organizations:

> (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

> (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

> (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

*Id.*

In order to state a claim under this provision, Richardson is required to plead sufficient factual allegations that the actions taken by OP & CMIA and Local 132 were motivated by racial animus.  There is no direct evidence of discrimination in this case.  Circumstantial evidence can form the basis of a discrimination claim, but there are simply no allegations in the complaint that the actions allegedly taken by OP & CMIA or Local 132 were racially motivated.  While Richardson's amended complaint contains allegations of racism against African-American

workers, his complaints of discriminatory labor practices were directed at the *employers* of union members, not the union itself.  (Am. Compl. at 1, ECF No. 22 at PageID# 141.)  Crucially, Richardson does not allege, at any point, that OP & CMIA or Local 132 excluded him from membership or failed to refer him for employment because he is an African-American.

Even if OP & CMIA or Local 132 caused employers not to hire or re-hire Richardson, Richardson does not allege that Chaicci or Higgins told employers not to hire him because he is an African-American.  Because Richardson has failed to allege any racial motivations for the alleged actions of the union, Richardson's claims for discrimination against OP & CMIA and Local 132 are **DISMISSED**.

### 3.    Retaliation

The Court also construes Richardson's amended complaint as attempting to plead a claim for retaliation under Title VII.  To establish a prima facie case of retaliation, Richardson must show "(1) that he engaged in an activity protected by Title VII; (2) that this exercise of his protected civil rights was known to defendant; (3) that defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action."  *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990).

Richardson's allegations, construed in the light most favorable to him, establish a prima facie case for retaliation.  Richardson's allegations establish that he engaged in protected activity when he spoke at the international union meeting in 2006 and again when he filed an unfair labor practice charge against the union.  The allegations make it clear that the defendants knew about

13

the protected activity because Bailey, an OP & CMIA field representative, escorted Richardson out of the meeting after his speech.  Richardson also alleges that the OP & CMIA was aware of protected activity several years later when a union employee rebuffed Richardson's attempts to rejoin the union and obtain work by saying Richardson had charges against the union.  Failing to refer Richardson for employment was an action adverse to Richardson's employment.  Richardson's allegations also tend to make a causal connection plausible, as Richardson cites statements allegedly made to him that he was a troublemaker and that the union did not want troublemakers.  There are sufficient factual allegations to present a plausible claim for retaliation against OP & CMIA and Local 132.[3]

Moreover, Richardson also alleges--

In the fall of 2011 at the contractors convention I spoke with Mr. [Chaicci] as they were signing applications for people to get into the union for casino job work.  He didn't recognize me but, when he did, he stated that [I] made trouble and he would talk to [I]nternational.  Then [sic] I explained I would go to Smoot Construction, he then responded for me not to go over there stepping on anyones [sic] toes, I then responded [I]'m just looking for a job.  [A]fter the conversation I called him, and was told there was still no work available.  After two calls I was told I have charges against the union, and the union business agent hung up on me.  Throughout 2011-2012 I called repeatedly, I was told I wouldnt [sic] be able to get my pension money, or get back in to the union, after they told the EEOC I would be able too [sic].

(Am. Compl. at 3, ECF No. 22.)

Liberally construing this passage of Richardson's amended complaint, which the Court

_____

[3] OP & CMIA also argues that it cannot be held vicariously liable for actions of its Local 132 and that, therefore, Richardson has not stated a valid claim as against OP & CMIA.  (ECF No. 26 at 11.)  Though his amended complaint is not a model of clarity, it appears that Richardson may be alleging that both the Local 132 and OP & CMIA engaged in prohibited activity.  Accordingly, the Court cannot dismiss OP & CMIA based on the notion that Richardson is alleging only vicarious liability against it.

14

must at this stage, Richardson is apparently alleging that the union (either the Local 132 or the

OP & CMIA) took adverse actions against him for reasons related to Richardson's past protest

and complaint against what he perceived to be unfair practices related to African-American

union members.  So characterized, even if Richardson may potentially have a statute of

limitations problem with regard to actions occurring prior to January 18, 2011, Richardson at the

very least has stated (at this point) a claim with respect to alleged retaliatory acts occurring in

2011.

### E.    *Intentional Tort Claims*

Richardson's amended complaint does not specify what "intentional tort" the defendants

have allegedly committed but this Court concludes that it was Richardson's intention to make a

claim for "assault, libel, and slander" because he marked this box on the civil cover sheet

submitted with his original complaint.  (ECF No. 1, at Page ID # 36.)  Even if this was

Richardson's intent, however, the pleadings are insufficient to state a claim for any of these torts.

Richardson does not allege anywhere in his complaint that he was ever threatened with a

physical intrusion or made fearful of such an intrusion.  Accordingly, there are insufficient facts

pleaded to state a plausible claim for assault.

The allegations are also insufficient to state a claim for either libel or slander.  These torts

require Defendants to have made a false and defamatory statement about Richardson.

Richardson does not allege, however, that any of the defendants made false statements about

him.  Richardson only alleges that some of the defendants told others not to hire or re-hire him;

he does not allege that any defendant made personal attacks on his character or reputation, nor

15

does Richardson specify a particular statement as being defamatory.  Richardson has therefore failed to state a claim for libel or slander.

Because the pleadings are insufficient to establish a facially plausible claim for the intentional torts of assault, libel, or slander, Richardson's intentional tort claims are **DISMISSED** against all defendants.

### IV.

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the motion to dismiss of Joe Chaicci and Local 132 (ECF No. 26), **GRANTS IN PART AND DENIES IN PART** OP & CMIA's motion to dismiss (ECF No. 25), **GRANTS** Mark McCleskey's motion to dismiss (ECF No. 28), and **GRANTS** the motion to dismiss as to Richard Bailey and John Higgins (ECF No. 30).  This Court accordingly **DISMISSES** all claims against Defendants Chaicci, McCleskey, Bailey, and Higgins; these individuals are no longer parties to this action.  As to the claims against Local 132 and OP & CMIA, the Court **DISMISSES** claims under the Nassau County (N.Y.) UDPL, claims under Sections 157 and 158 of the NLRA, and claims alleging discrimination in violation of Title VII.  Richardson's claim alleging Title VII retaliation against Defendants OP & CMIA and OP & CMIA Local #132 remains pending.

**IT IS SO ORDERED**.

> _____/s/ Gregory L. Frost_____
> GREGORY L. FROST
> UNITED STATES DISTRICT JUDGE